34

Receipt Number
567557

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| **UNITED STATES OF AMERICA ex rel. TED A. ARKFELD, D.C. AND ANN Myers** | Case: 2:08-cv-10640<br>Judge: Cleland, Robert H<br>Referral MJ: Komives, Paul J<br>Filed: 02-14-2008 At 11:00 AM<br>POSSIBLE SEALED MATTER (EW) |
| **Plaintiffs,** | |
| **v.** | **Civil Action No.:** |
| **MARVIN L. BLEIBERG, M.D., AND MEDICAL REHABILITATION PHYSICIANS, PLC** | **FILED UNDER SEAL** |
| **Defendants** | |

### COMPLAINT

This is an action to recover damages and civil penalties on behalf of the United States of America ("United States") by Relator/Plaintiffs Ted A. Arkfeld, D.C. and Ann Myers, by and through their attorneys Kenneth Joel Haber, Douglas G. Wadler, and Michael J. Tabacco of the Law Office of Kenneth Joel Haber, P.C., arising out of false claims presented by Defendants under the Medicare program and other Federal Health Care Programs.

### JURISDICTION AND VENUE

1. This action arises under the provisions of 31 U.S.C. §§3729 *et seq.*, commonly called the False Claims Act ("FCA"). The FCA provides, among other things, that the United States District Courts have exclusive subject matter jurisdiction over actions brought under it.

1

2.  Under 31 U.S.C. §3732(a), "[a]ny action under Section 3730 may be brought in any judicial district in which the defendant . . . can be found, resides, transacts business, or in which any act proscribed by Section 3729 occurred."

3.  Upon information and belief, the acts complained herein occurred in Mt. Pleasant, Michigan, West Bloomfield, Michigan, and Gaylord, Michigan.

4.  Under Subsection 3730(b)(2) of the FCA, this Complaint is to be filed in camera and to remain under seal for a period of at least sixty (60) days and shall not be served on the Defendants until the court so orders. The United States may elect to intervene and proceed with the action within sixty (60) days after it receives both the Complaint and the material evidence and information.

## PARTIES TO THE ACTION

5.  Qui tam plaintiff Ted Arkfeld, D.C. (hereinafter "Dr. Arkfeld" and/or "relator") is a citizen and resident of Gaylord, Michigan. He is a Doctor of Chiropracty, licensed to practice chiropracty in the state of Michigan, as well as a Certified Professional Coder ("CPC"). Relator Dr. Arkfeld brings this action on behalf of the United States and himself.

6.  Qui tam plaintiff Ann Myers, CPC (hereinafter "Ms. Myers" and/or "relator") is a citizen and resident of Mt. Pleasant, Michigan. Relator Ms. Myers brings this action on behalf of the United States and herself. Ann Myers is a Certified Professional Coder and was employed by Defendants.

7.  As required by Subsection 3730(a)(2) of the FCA, Relators have provided both the Attorney General and the United States Attorney for the Eastern District of Michigan, simultaneous with the filing of this Complaint, a statement of all material evidence and

2

information which they possess and that relates to the issues raised in this Complaint. The statement of evidence and information substantially supports the allegations made in the Complaint.

8.   Defendant Marvin N. Bleiberg, M.D. (hereinafter "Dr. Bleiberg", "Bleiberg" and/or "defendant") is a citizen and resident of West Bloomfield, Michigan. He is a Medical Doctor, licensed to practice medicine in the state of Michigan, who has worked as a pain management specialist in various locations within the state of Michigan.

9.   Upon information and belief, Dr. Bleiberg is and has been the sole owner of Medical Rehabilitation Physicians, PLC.

10.   Defendant Medical Rehabilitation Physicians, PLC, doing business as Michigan Spine and Pain, (hereinafter "MSP" or "defendant") is a corporation organized under the laws of the state of Michigan, and it is a provider of medical, chiropractic, and physical therapy services.

11.   Upon information and belief, MSP operates offices and clinics in Mt. Pleasant, Michigan, West Bloomfield, Michigan, and Gaylord, Michigan.

12.   Upon information and belief, MSP employs more than fifty (50) people at its three Michigan locations.

13.   Upon information and belief, Medical Rehabilitation Physicians, PLC, doing business as MSP, did own and operate various facilities in the state of Michigan, and each one of these medical facilities referred to herein as "Defendant" or "Defendant Clinics."

14.   The Defendant Clinics provide and have provided medical, chiropractic, and physical therapy services to patients and receive and have received payment for those services through private pay and public methods, including but not limited to Medicare.

3

15.   Relator Dr. Arkfeld was hired by MSP to treat patients as a chiropractor starting in May 2004.

16.   Relator Dr. Arkfeld initially worked at MSP's Mt. Pleasant location until October 2005, when he started to work on a full-time basis at MSP's Gaylord location.

17.   Relator Dr. Arkfeld continued to work as a chiropractor for MSP until July 2007.

18.   Relator Ms. Myers was hired by MSP to provide medical billing services starting in March 2001.

19.   Relator Ms. Myers became a Certified Professional Coder ("CPC") in 2003.

20.   Relator Ms. Myers worked as the billing manager at MSP's Mt. Pleasant location, and she continued to work in that position until February 2006.

## REIMBURSEMENT PROVISIONS FOR PHYSICIAN SERVICES UNDER THE MEDICARE PROGRAM

21.   The United States Department of Health and Human Services ("DHHS") administers federal Medicare programs under the Social Security Act ("the Act").

22.   The Medicare program pays physicians for services and items furnished when their rendering or use is determined to be medically reasonable and necessary.

23.   Under the Medicare program, physicians are paid for the covered services and items which they furnish.

24.   Physician services are paid by Medicare for those professional services rendered directly by the physician.

25.   Other medical and professional services are paid by Medicare for those services rendered to a patient directly by a licensed medical professional.

4

26.   Physicians and other licensed medical professionals submit billing information to Medicare utilizing a listing of descriptive terms and identifying codes known as the Current Procedural Terminology ("CPT").

27.   The Medicare program pays for specific medical, physical therapy, and chiropractic services included in the CPT Codes.

28.   The Medicare program does not pay for services rendered by a physician or other licensed medical professional if those services are not medically necessary.

29.   The Medicare program does not pay for services that the Centers for Medicare & Medicaid Services ("CMS") has determined to be investigational, of no scientific benefit to patients and/or not medically necessary.

## MEDICARE CODING PROCEDURES

30.   Pursuant to the Social Security Act, the DHHS Secretary provides for distribution of a notice containing an explanation of the benefits available under the Medicare Program.  42 U.S.C. §1395b-2(a).

31.   Pursuant to the Act, the DHHS Secretary furnishes an explanation of Medicare benefits to each individual for whom payment has been made, and the explanation lists the item or service for which payment has been made and the amount of such payment for each item or service.  42 U.S.C. §1395b-7(a).

32.   Pursuant to the Act, each request for payment, or bill submitted, for an item or a service provided by a physician or practitioner, for which payment may be made under the Medicare program, "shall include the appropriate diagnosis code (or codes) as established by the Secretary for such item or service."  42 U.S.C. §1395u(p).

5

33.  CMS has adopted from the American Medical Association ("AMA") the Current Procedural Terminology, Fourth Edition ("CPT-4") as part of its Healthcare Common Procedure Coding System ("HCPCS").

34.  When a physician or other healthcare provider chooses a CPT code to present a claim for a particular procedure, it must fairly represent the procedure performed in terms of the nature of the problem addressed (diagnosis), its complexity, its risk, the time involved and the health care provider actually rendering the service.  Not using the appropriate CPT code can result in under billing ("down-coding") or over billing ("up-coding"), both of which are illegal.

35.  Up-coding occurs when the physician or health care provider uses a code for a procedure that was not rendered or uses a code for a procedure that was in fact greater in scope or more complex than the service actually rendered on the date the service was allegedly provided. Up-coding results in an overcharge to the Government and overpayment to the physician or health care provider.

36.  Physicians and other healthcare providers who submit claims for compensation to CMS are required to certify that their claims are true and correct, that their claims are for services that were actually performed, and that the services provided were reasonable and medically necessary.

37.  Up-coding results in overcharges to CMS and the taxpayers who support the Medicare system.  Up-coding is prohibited.

38.  When a patient's particular medical condition indicates that certain services be rendered, it is said that the services provided are reasonable and medically necessary.

39.  Some proponents of spinal decompression claim that the treatment provides relief to

6

individuals who suffer from severe back and neck pain by reducing the pressure within the patient's spinal discs.

40.   Some proponents of spinal decompression claim that through the use of a DRS table (or similar spinal decompression unit. One such table is named the VAX-D. This name is used both as the name of the particular table as well as the general treatment with any similarly-manufactured table.), the bones of the spine are slowly and methodically separated and that as the vertebrae are separated, pressure is slowly reduced within the spinal discs, and disc bulges and disc herniations are reduced.

41.   Spinal decompression, also known as VAX-D, through the use of a DRS table, is not a covered service under the Medicare Program.

42.   The United States Government, through CMS, has determined that – while some health care professionals have performed spinal decompression in an attempt to provide symptomatic relief to patients who suffer from pain associated with lumbar disc problems – spinal decompression does not constitute medically necessary treatment.

43.   The United States Government, through CMS, has issued a determination that there is insufficient scientific data to support the benefits of the spinal decompression technique, by use of a DRS table, and, therefore, spinal decompression, is not covered by Medicare.

44.   Physicians and other licensed medical professionals that choose to provide spinal decompression on DRS tables to their patients are directed not to bill Medicare for such services.

45.   Physicians or other licensed medical professionals who provide spinal decompression services utilizing a DRS table (or similar spinal decompression unit) are directed to not submit bills to Medicare for such services.

7

46.   Physicians or other licensed medical professionals who provide spinal decompression services must apply a non-reimbursable CPT Code (S9090 or 97799) for such services in the course of submitting billing information to Medicare.

47.   CMS has adopted the use of the CPT Codes to be utilized by physicians and other health care providers in the course of submitting bills for professional services.

48.   CPT Code 97012 is utilized for billing mechanical traction services.

49.   CPT Code 97035 is utilized for billing each fifteen (15) minute period of ultrasound services.

50.   CPT Code 97530 is utilized for billing each fifteen (15) minute period of therapeutic activities.  Services billed under this CPT Code must involve direct (one-on-one) patient contact by the provider and the use of dynamic activities to improve functional performance.

51.   CPT Code 97140 is utilized for billing each fifteen (15) minute period of manual therapy techniques.  Such therapy techniques include mobilization/manipulation, manual lymphatic drainage, and manual traction.

52.   CPT Codes 99201 through 99205 apply to office or other outpatient services provided to a new patient.

53.   CPT Code 99201 is utilized for billing for an initial office visit for a new patient, and it is the least intrusive and least reimbursable code for such services.

54.   CPT Code 99202 is utilized for billing for an initial office visit for a patient with minimal-to-moderate symptoms.

55.   CPT Code 99203 is utilized for billing for an initial office visit for a patient with moderate symptoms.

8

56.   CPT Code 99204 is utilized for billing for an initial office visit for a patient with moderate symptoms or moderate-to-severe symptoms.

57.   CPT Code 99205 is utilized for billing for an initial office visit for a patient with severe symptoms and/or for a patient requiring immediate hospitalization or surgery.

58.   CPT Codes 99241 through 99245 apply to office or other outpatient consultations provided to new or established patients.

59.   CPT Code 99243 is utilized for billing an initial office consultation for a patient with moderate symptoms.

60.   CPT Code 99244 is utilized for billing an initial office consultation for a patient with moderate-to-severe symptoms.

61.   Chiropractic Manipulative Treatment (CMT) is a form of manual treatment to influence joint and neurophysiological function.

62.   For purposes of CMT, the five spinal regions on which a chiropractor may provide treatment are the cervical region, the thoracic region, the lumbar region, the sacral region, and the pelvic region.

63.   The five extraspinal regions on which a chiropractor may provide treatment are the head (including the temporomandibular joint) region, the lower extremities, the upper extremities, the rib cage, and the abdomen.

64.   CMT may only be provided to a patient by a licensed chiropractor and may only be provided to a patient when such treatment is medically necessary.

65.   CPT Codes 98940 through 98943 are the only codes that can be utilized in connection with submitting bills for chiropractic treatment.

9

## RELATORS' STATEMENT OF FACTS

### Improper Billing For Spinal Decompression

66.   Defendants Dr. Bleiberg and Medical Rehabilitation Physicians, PLC, doing business as Michigan Spine and Pain or MSP, treated patients for back pain and related ailments at MSP's three Michigan locations – in Mt. Pleasant, West Bloomfield, and Gaylord.

67.   Upon information and belief, Defendants Dr. Bleiberg and Medical Rehabilitation Physicians, PLC, doing business as Michigan Spine and Pain or MSP, purchased two DRS tables for the purpose of providing spinal decompression (also known as Vertebral Axial Decompression ("VAX-D")) services for patients at MSP's Mt. Pleasant location.

68.   Some, if not all, of the patients receiving professional services at MSP's Mt. Pleasant location underwent treatment known as spinal decompression, which involved the use of a DRS Spinal Decompression Unit ("DRS table").

69.   Upon information and belief, starting on a date to be determined and continuing to the present, Defendants Dr. Bleiberg and MSP have improperly billed Medicare and the federal health care programs for spinal decompression services provided to patients at the Mt. Pleasant location.

70.   Upon information and belief, starting on a date to be determined and continuing to the present, Defendants Dr. Bleiberg and MSP have improperly billed Medicare and the federal health care programs for services which were never provided to patients at the Mt. Pleasant location.

71.   Upon information and belief, starting on a date to be determined and continuing to the present, Defendants Dr. Bleiberg and MSP have improperly billed Medicare and the federal

10

health care programs for services to patients which were not medically necessary.

72.   Upon information and belief, Defendants Dr. Bleiberg and MSP engaged in and continues to engage in a pattern of regular, routine, and significant billing and coding irregularities.

73.   Relator Dr. Arkfeld was initially employed by MSP in May 2004, and he worked as a chiropractor at MSP's Mt. Pleasant location and as a chiropractor at MSP's Gaylord locations after that clinic opened for business in November 2004.

74.   In or about October 2005, MSP hired a new chiropractor to work at the Mt. Pleasant location, and thereafter, Dr. Arkfeld worked full-time as a chiropractor at MSP's Gaylord location.

75.   Dr. Arkfeld continued to work as a chiropractor at MSP's Gaylord location until July 2007.

76.   Dr. Arkfeld, as an employee of MSP, had access to MSP's billing records through use of the office computers, and as a Certified Professional Coder ("CPC"), he was able to analyze the patient billings for accuracy and compliance with coding procedures.

77.   Upon information and belief, Defendants Dr. Bleiberg and MSP improperly billed Medicare and other third party payers for spinal decompression services; that is, services which were not reimbursable by Medicare and services that were not reimbursable by most (if not all) health care programs.

**Improper Billing For Services Not Provided**

78.   Upon information and belief, Defendants Dr. Bleiberg and MSP billed Medicare for mechanical traction under CPT Code 97012 when, in fact, the patient had undergone spinal

decompression using the DRS table.

79.   Upon information and belief, Defendants Dr. Bleiberg and MSP billed Medicare for manual traction under CPT Code 97140 when, in fact, the patient had undergone the Active Trax procedure, a Mechanical Traction procedure which should have been billed under CPT Code 97012 (mechanical traction).

80.   The Active trax procedure is a mechanical traction procedure which should be billed under the CPT code 97012.

81.   The CPT code for the Active Trax procedure is 97012 and said code is reimbursed less than the CPT code for manual traction, CPT code 97140.

82.   The CPT Code 97140 for Manual Traction is able to bill more units of time than the CPT Code 97012 for Mechanical Traction.

83.   Upon information and belief, Defendants Dr. Bleiberg and MSP billed Medicare for therapeutic activities under CPT Code 97530 when, in fact, the patient had undergone spinal decompression using the DRS table.

84.   Upon information and belief, Defendants Dr. Bleiberg and MSP billed Medicare for a combination of therapeutic activities, under CPT Code 97530, hot and cold pack therapy, under CPT Code 97010, and mechanical traction, under CPT code 97012, when, in fact, the patient had undergone spinal decompression using the DRS table.

85.   Upon information and belief, Defendants Dr. Bleiberg and MSP provided spinal decompression services to patients and knowingly billed Medicare for other reimbursable services because they were aware that spinal decompression using the DRS table was not a service that was reimbursable by Medicare.

12

86.   Upon information and belief, Defendants Dr. Bleiberg and MSP billed Medicare for spinal decompression services utilizing reimbursable CPT Codes, when they should have only used a non-reimbursable CPT Code (S9090 or 97799) to describe those services.

87.   Upon information and belief, Defendants Dr. Bleiberg and MSP billed Medicare for mechanical traction under CPT Code 97012, for therapeutic activities under CPT Code 97530, for manual traction under CPT Code 97140 and for hot and cold packing under CPT Code 97010 when no such services had actually been provided to their patients.

88.   Upon information and belief, Defendants Dr. Bleiberg and MSP knowingly billed Medicare for mechanical traction, therapeutic activities, manual traction and hot and cold packing when no such services had actually been provided to their patients.

89.   Relator Dr. Arkfeld, through his review of computer medical and billing records, was able to identify that bills pertaining to specific Medicare patients, who had undergone spinal decompression using the DRS table, claimed that mechanical traction, therapeutic activities and hot and cold packing had been furnished instead.

90.   Relator Anne Myers, due to her knowledge as a CPC, her position as billing Manager at MSP and her review of DRS office protocol flow sheets with Amy Mann, a licensed physical therapist, was able to ascertain that bills pertaining to specific Medicare patients, who had undergone spinal decompression using the DRS table, claimed that mechanical traction, therapeutic activities, and hot and cold packing had been furnished instead.

91.   Relator Anne Myers, due to her knowledge as a CPC and her position as billing Manager at MSP, ascertained that bills pertaining to specific Medicare patients, who had undergone the Active Trax procedure (a mechanical traction procedure), claimed that manual

traction had been furnished instead.

## Improper Billing For Services At an Excessive Rate

92.  Upon information and belief, Defendants Dr. Bleiberg and MSP billed Medicare for office or other outpatient services provided to new patients (under CPT Codes 99205, 99204, and 99203) when they should have billed Medicare for less reimbursable services (under CPT Codes 99201 and 99202).

93.  Upon information and belief, Defendants Dr. Bleiberg and MSP provided and/or billed Medicare for services to patients when they were not medically necessary.  For example, Defendants would perform and/or billed Medicare for full spinal exams on all patients, even when a patient reported to be suffering from only neck pain.

94.  Defendants Dr. Bleiberg and MSP equipped the Mt. Pleasant location with tables designed to perform mechanical traction, but upon information and belief, they billed Medicare for mechanical traction even when the actual services rendered involved spinal decompression on a DRS table.

95.  Defendant Dr. Bleiberg was aware that spinal decompression utilizing a DRS table was not reimbursable by Medicare, and Dr. Bleiberg repeatedly complained to Dr. Arkfeld and Anne Myers about Medicare's refusal to issue payments for spinal decompression services.

96.  Defendant Dr. Bleiberg informed Dr. Arkfeld that he had purchased two DRS tables – one for approximately $60,000 and one for approximately $100,000 – and Dr. Bleiberg routinely complained about the fact that the spinal decompression services furnished on the DRS tables were not reimbursed by Medicare and other third party payers.

97.  Upon information and belief, Defendant Dr. Bleiberg stated to Anne Myers, and

14

Myers then relayed to Dr. Arkfeld, that he would be able to recover some payments for spinal decompression services by billing for those services under the code for mechanical traction (*i.e.*, CPT Code 97012).

98. Relator Dr. Arkfeld reviewed MSP billing records over the computer and performed unofficial audits on MSP's records in conjunction with his preparation for the CPC certification examination. These reviews permitted Dr. Arkfeld to discover the billing discrepancies alleged herein.

99. Relator Anne Myers, due to her knowledge as a CPC, her position as billing Manager at MSP and her review of DRS office protocol flow sheets with Amy Mann, licensed physical therapist, was able to discover the billing discrepancies alleged herein.

100. Upon information and belief, Theresa Anderson, who held the title of Chief Executive Officer of MSP, also had knowledge of MSP's improper billing for spinal decompression services. She processed these improper claims and caused these improper claims to be processed and submitted to Medicare.

101. Upon information and belief, Theresa Anderson, worked at MSP's Mt. Pleasant location where all of MSP's billing was done, and she had full knowledge of the day-to-day administrative operations of the MSP clinics.

102. Upon information and belief, Bill Collison and Jessica Johnson were also MSP employees, and they trained other company employees on how to provide spinal decompression services on the DRS tables.

103. Upon information and belief, Defendant Dr. Bleiberg complained to Bill Collison and Jessica Johnson with regard to the high cost of the DRS tables and the refusal of Medicare to

15

issue payments for spinal decompression services.

104.   Upon information and belief, Defendants Dr. Bleiberg and MSP also billed Medicare for therapeutic activities, under CPT Code 97530, when the patient had actually been provided spinal decompression services on DRS tables.

105.   Upon information and belief, Defendants Dr. Bleiberg and MSP billed Medicare for therapeutic activities, under CPT Code 97530, when no such services had been received by the patient.

106.   Upon information and belief, Defendants Dr. Bleiberg and MSP also billed Medicare for mechanical traction, under CPT Code 97012, when the patient had actually been provided spinal decompression services on DRS tables.

107.   Upon information and belief, Defendants Dr. Bleiberg and MSP billed Medicare for mechanical traction, under CPT Code 97012, when no such services had been received by the patient.

108.   Upon information and belief, Defendants Dr. Bleiberg and MSP also billed Medicare for hot and cold pack therapy, under CPT Code 97010, when the patient had actually been provided spinal decompression services on DRS tables.

109.   Upon information and belief, Defendants Dr. Bleiberg and MSP billed Medicare for hot and cold pack therapy, under CPT Code 97010, when no such services had been received by the patient.

110.   Upon information and belief, Defendants Dr. Bleiberg and MSP also billed Medicare for manual traction, under CPT Code 97140, when the patient had actually been provided mechanical traction services.

16

111.   Upon information and belief, Defendants Dr. Bleiberg and MSP billed Medicare for manual traction, under CPT Code 97140, when no such services had been received by the patient.

112.   Upon information and belief, Defendants Dr. Bleiberg and MSP billed for excessive units of time for services, improperly submitting bills for larger amounts than appropriate in order to obtain greater payments from Medicare. For example, Dr. Bleiberg submitted bills to Medicare indicating a patient had received 45 minutes of a combination of mechanical traction, active therapeutic services and hot and cold packing when the patient had, in fact, received only twenty minutes of spinal decompression on a DRS table.

113.   Upon information and belief, Defendants Dr. Bleiberg and MSP failed to follow proper time code values and billed Medicare for units of time during which no patient services were actually being furnished.

114.   Upon information and belief, Defendants Dr. Bleiberg and MSP submitted bills for three units of time (a total of forty-five minutes) even when the patient only received spinal decompression for a period of approximately twenty minutes – and even though spinal decompression should not have been billed at all under a reimbursable CPT Code.

115.   Upon information and belief, Defendants Dr. Bleiberg and MSP billed Medicare for up to twenty-five minutes of services for various patients when, in fact, no reimbursable services were being furnished to those patients.

116.   In or about 2006, Theresa Anderson, as the Chief Executive Officer of MSP, issued a memo ("the 2006 memo") stating that patients who received spinal decompression on the DRS tables should be billed directly for those services as self-paying patients, thereby acknowledging

17

that such services were not reimbursable by Medicare and most other third party payers.

117.   After the 2006 memo was issued, most patients treated at MSP declined to receive spinal decompression on the DRS tables after being advised that they would have to pay for such services out of their own pockets.

118.   After the 2006 memo was issued, the DRS tables at MSP's Mt. Pleasant location were rarely utilized.

119.   After the 2006 memo was issued, the MSP employees who had operated the DRS tables and provided spinal decompression services to patients were assigned to other departments at the clinic.

120.   Upon information and belief, after the 2006 memo was issued, Defendants Dr. Bleiberg and MSP ceased billing Medicare for spinal decompression services.

121.   Upon information and belief, even before the 2006 memo was issued, Defendant Dr. Bleiberg knew that billing for DRS table use was improper and illegal as evidenced by Dr. Bleiberg's statement's to Relators indicating his unwillingness to accept Medicare's determination not to allow reimbursement for spinal decompression services.

122.   Upon information and belief, Defendants Dr. Bleiberg and MSP billed Medicare under unjustifiable office visit codes in order to receive a greater rate of reimbursement from Medicare.

123.   Upon information and belief, Defendants Dr. Bleiberg and MSP routinely billed Medicare under CPT Code 99204 for a patient's office visit when another CPT Code that would have resulted in a smaller payment from Medicare (such as CPT Code 99201 or CPT Code 99202) should have been used.

18

124.   Upon information and belief, Defendants Dr. Bleiberg and MSP routinely billed Medicare under CPT Code 99243 or CPT Code 99244 for consultation with a patient when another CPT Code, that would have resulted in a smaller payment from Medicare (such as CPT Code 99241), should have been used.

## Improper Billing For Services That Are Not Medically Necessary

125.   Upon information and belief, CMS has sought to and is actively seeking to address the medically unnecessary use of spinal injections and other treatments for patients who allegedly suffer from back pain.

126.   Upon information and belief, Defendants Dr. Bleiberg and MSP billed Medicare for services that were rendered to patients, allegedly suffering from back pain, when those services were not medically necessary.

127.   Upon information and belief, Defendants Dr. Bleiberg and MSP assigned diagnoses to patients that were not supported by the patients' medical history, examination results, and diagnostic tests with the intention of submitting larger bills to Medicare than were medically warranted.

128.   Upon information and belief, Defendants Dr. Bleiberg and MSP implemented treatment plans that were not appropriate for their patients' medical conditions with the intention of submitting larger bills to Medicare than were medically warranted.

129.   Upon information and belief, Defendants Dr. Bleiberg and MSP provided spinal injections to patients even though the pain levels experienced by the patients were much too low to justify the injections.

130.   Upon information and belief, Defendants Dr. Bleiberg and MSP billed Medicare

19

for spinal injections and additional treatments to their patients that were not medically necessary.

131.   Upon information and belief, Defendants Dr. Bleiberg and MSP billed Medicare for multiple spinal injections given to some patients even though prior injections had been ineffective, and thus, they billed Medicare for services that were not medically necessary nor warranted.

132.   Upon information and belief, Defendants Dr. Bleiberg and MSP billed Medicare for the administration of epidural steroid injections to patients, knowing that those services were not medically necessary.

133.   Upon information and belief, Defendants Dr. Bleiberg and MSP administered epidural steroid injections to all of the patients who sought treatment for back pain at the Gaylord location even when there was insufficient documentation to justify the medical necessity of those injections.

134.   Upon information and belief, Defendants Dr. Bleiberg and MSP administered epidural steroid injections to patients who did not need such services, and they billed Medicare for those injections.

135.   Upon information and belief, Defendants Dr. Bleiberg and MSP administered epidural steroid injections to patients for whom those services had been ineffective, and they billed Medicare for those injections.

136.   The Gaylord location of MSP was a multi-disciplinary clinic composed of a chiropractic department and a medical department.

137.   Initially, all patients who sought treatment at the Gaylord clinic would be evaluated by Dr. Arkfeld in the chiropractic department, and they would be referred to the medical

department when appropriate.

138.   Upon information and belief, all patients who were referred to the medical department of the Gaylord clinic would receive epidural steroid injections regardless of whether such injections were medically warranted.

139.   In or about January 2007, MSP changed the policies at the Gaylord clinic and mandated that all patients would be evaluated and treated initially in the medical department (and not in the chiropractic department as MSP had previously directed).

140.   Upon information and belief, Defendants Dr. Bleiberg and MSP were dissatisfied with the lack of number of patients who had been referred by Dr. Arkfeld to the medical department, and they implemented the new policies with the intent of increasing the amounts to be billed to Medicare and other third party payers.

141.   Upon information and belief, Defendants Dr. Bleiberg and MSP sought to provide more services in the medical department of the Gaylord clinic so that they could bill Medicare and other third party payers for services that were not medically necessary.

**Improper Billing For Services In Violation of Standard Billing Procedures**

142.   Relator Anne Myers was an employee of Defendant MSP from March 2001 through February 2006 where she worked in the Mt. Pleasant location as a billing representative and as the company's Billing Manager.

143.   Ms. Myers became a Certified Professional Coder ("CPC") during 2002.

144.   Upon information and belief, Ms. Myers left her position at MSP in 2006 in order to seek other employment.

145.   As the Billing Manager for MSP, Ms. Myers was aware that Defendants Dr.

Bleiberg and MSP had purchased two DRS machines for the purpose of providing spinal decompression services at the Mt. Pleasant location.

146.   As the Billing Manager for MSP and as a CPC, Ms. Myers knew that the spinal decompression services were not reimbursable by Medicare.

147.   As the Billing Manager for MSP and as a CPC, Ms. Myers became aware of various schemes perpetrated by Defendants Dr. Bleiberg and MSP to fraudulently bill Medicare for spinal decompression services.

148.   As a result of a review of DRS office protocol flow sheets undertook by Ms. Myers and Amy Mann, a Licensed Physical Therapist, Ms. Myers became aware of various schemes perpetrated by Defendants Dr. Bleiberg and MSP to fraudulently bill Medicare for spinal decompression services.

149.   Upon information and belief, Ms. Myers has knowledge that Defendants Dr. Bleiberg and MSP billed Medicare for the use of the DRS machines for spinal decompression under improper CPT Codes.

150.   Upon information and belief, Ms. Myers has knowledge that Defendants Dr. Bleiberg and MSP billed Medicare for specific services, including mechanical traction, manual traction, therapeutic activities and hot and cold packing, which had not been furnished to MSP patients.

151.   Upon information and belief, Ms. Myers has knowledge that Defendants Dr. Bleiberg and MSP billed Medicare for excessive time increments in connection with the services that were furnished to MSP patients.

152.   Upon information and belief, Ms. Myers has knowledge that Defendants Dr.

22

Bleiberg and MSP billed Medicare utilizing CPT Codes that were reimbursable at a higher rate than the Codes that should have been billed for the services provided to MSP patients.

153.   Upon information and belief, Dr. Arkfeld has knowledge that Defendants Dr. Bleiberg and MSP administered epidural steroid injections to patients that were not medically necessary and that they billed Medicare for those excessive services.

154.   Upon information and belief, Relators, Ms. Myers and Dr. Arkfeld, have knowledge to support a finding that Defendants Dr. Bleiberg and MSP engaged in improper billing activities and submitted improper bills to Medicare in order to obtain greater reimbursement than should have been received, based on their patients' medical conditions and/or based on the actual services rendered.

155.   Upon information and belief, Defendant Dr. Bleiberg complained to Relators Dr. Arkfeld and Ms. Myers, as well as other MSP employees, regarding the high cost of the DRS tables.

156.   Upon information and belief, Defendants Dr. Bleiberg and MSP resisted correcting their practice of billing for spinal decompression on the DRS tables, by using improper CPT Codes to obtain Medicare payment for those services.

157.   Upon information and belief, Ms. Myers, through her CPC certification, became aware that use of the DRS machines for spinal decompression should have been billed using non-reimbursable CPT Codes (S9090 and 97799), but Defendants declined to use those CPT Codes in submitting bills to Medicare or other third party payers.

158.   Upon information and belief, Defendants Dr. Bleiberg and MSP knowingly billed Medicare for the application of hot or cold packs (CPT Code 97010), mechanical traction (CPT

Code 97012) and therapeutic activities (CPT Code 97530), when spinal decompression -- a non-reimbursable service – had actually been furnished to the patient.

159. Upon information and belief, Defendants Dr. Bleiberg and MSP knowingly billed Medicare for manual traction under CPT Code 97140 when the Active Trax procedure, a mechanical traction service billed under CPT Code 97012, had been furnished instead.

160. Upon information and belief, Ms. Myers, through her CPC certification, became aware that manual traction, billed under CPT Code 97140, was reimbursed by Medicare at a higher rate than the Active Trax procedure, a mechanical traction service billed under CPT Code 97012.

161. Upon information and belief, Defendants Dr. Bleiberg and MSP knowingly billed Medicare for manual traction services when Active Trax procedures had instead been furnished to the patient so as to collect a greater amount of reimbursement from Medicare.

162. Upon information and belief, none of the Defendants have taken any steps to self-report the billing and coding irregularities by reporting them to the U.S. Government, as required by law.

163. Upon information and belief, none of the Defendants have taken any steps to repay the overbillings that have resulted from the coding and billing irregularities.

## CLAIM I

### Billing For Spinal Decompression Services

164. Relators re-assert, re-allege, and incorporate herein by reference the allegations contained in Paragraphs 1 through 163, as if fully set forth herein.

165. On or about such dates to be determined, and pertaining to specific patients and

24

services to be determined, the records being in the possession of the Defendants, Defendants did knowingly present, and cause to be presented to officers and employees of the United States Government, claims for payment from Medicare and the other Federal Health Care Programs for spinal decompression services.

166.   Defendants knowingly and intentionally submitted bills to Medicare and the other Federal Health Care Programs for various reimbursable services (such as mechanical traction, therapeutic activities and hot and cold pack therapy) when, in fact, spinal decompression services had been received by the patient.

167.   Defendants knowingly and intentionally submitted bills to Medicare and the other Federal Health Care Programs for spinal decompression services, utilizing reimbursable CPT Codes, even though they were aware that such services were not reimbursable by Medicare or other Federal Health Care Programs.

168.   Defendants did falsely represent in the claims they presented to Medicare and the other Federal Health Care Programs that the claims presented were true and accurate, when in truth and fact, the claims sought reimbursement for spinal decompression (*i.e.*, a non-reimbursable service).

169.   Based upon the Defendants' scheme to defraud Medicare and the other Federal Health Care Programs that has existed from a date yet to be determined to the date of this Complaint, Defendants have presented various false and fraudulent claims – the exact dates and amounts to be determined – for payment and approval to officers and employees of the United States Government for the services allegedly rendered.

25

## CLAIM II

### Billing For Services Not Rendered

170.  Relators re-assert, re-allege, and incorporate herein by reference the allegations contained in Paragraphs 1 through 163, as if fully set forth herein.

171.  On or about such dates to be determined, and pertaining to specific patients and services to be determined, the records being in the possession of the Defendants, Defendants did knowingly present, and cause to be presented to officers and employees of the United States Government, claims for payment from Medicare and the other Federal Health Care Programs by submitting bills for specific medical services that had not actually been rendered to Defendants' patients.

172.  Defendants knowingly and intentionally submitted bills to Medicare and the other Federal Health Care Programs for various reimbursable services (such as mechanical traction, manual traction, therapeutic activities active therapeutic service and hot and cold pack therapy) when, in fact, no such medical services had been received by Defendants' patients.

173.  Defendants knowingly and intentionally submitted bills to Medicare and the other Federal Health Care Programs utilizing reimbursable CPT Codes, for services such as mechanical traction, therapeutic activities and hot and cold pack therapy, even though they were aware that such services had not actually been provided to their patients and when in fact Spinal Decompression was instead furnished to Defendants' patients.

174.  Defendants knowingly and intentionally submitted bills to Medicare and the other Federal Health Care Programs utilizing reimbursable CPT Codes, for manual traction services even though they were aware that such services had not actually been provided to their patients

26

and when, in fact, the Active Trax procedure (a Mechanical traction procedure) was instead furnished to Defendants' patients.

175.   Defendants did falsely represent in the claims they presented to Medicare and the other Federal Health Care Programs that the claims presented were true and accurate, when in truth and fact, the claims sought reimbursement for reimbursable services that had not actually been furnished to their patients.

176.   Based upon the Defendants' scheme to defraud Medicare and the other Federal Health Care Programs that has existed from a date yet to be determined, Defendants have presented false and fraudulent claims – the exact dates and amounts to be determined – for payment and approval to officers and employees of the United States Government for services that had not been actually furnished to their patients.

## CLAIM III

### Billing At an Excessive Rate

177.   Relators re-assert, re-allege, and incorporate herein by reference the allegations contained in Paragraphs 1 through 163, as if fully set forth herein.

178.   On or about such dates to be determined, and pertaining to specific patients and services to be determined, the records being in the possession of the Defendants, Defendants did knowingly present, and cause to be presented to officers and employees of the United States Government, claims for payment from Medicare and the other Federal Health Care Programs that sought payment at a higher reimbursable rate than appropriate for the medical services that were actually furnished to their patients.

179.   Defendants knowingly and intentionally submitted bills to Medicare and the other

Federal Health Care Programs for office or other outpatient services provided to new patients utilizing CPT Codes that were reimbursable at a higher rate than appropriate for the medical services that were actually furnished to their patients.

180.  Defendants knowingly and intentionally submitted bills to Medicare and the other Federal Health Care Programs for consultation services provided to patients utilizing CPT codes that were reimbursable at a higher rate than appropriate for the medical services that were actually furnished to their patients.

181.  Defendants knowingly and intentionally submitted bills to Medicare and the other Federal Health Care Programs for excessive units of time of treatment than appropriate for the medical services that were actually furnished to their patients.

182.  Defendants knowingly and intentionally submitted bills to Medicare and the other Federal Health Care Programs utilizing CPT Codes for reimbursable services (such as mechanical traction, manual traction, therapeutic activities and hot and cold packing) when the actual services provided (such as spinal decompression or mechanical traction) were not reimbursable (spinal decompression), or were reimbursable at lower rates (Active Trax/mechanical traction), by Medicare and the Federal Health Care Programs.

183.  Defendants did falsely represent in the claims they presented to Medicare and the other Federal Health Care Programs that the claims presented were true and accurate, when in truth and fact, the claims sought reimbursement for non-reimbursable medical services and sought reimbursement for more units of time than appropriate for the services actually furnished.

184.  Based upon the Defendants' scheme to defraud Medicare and the other Federal Health Care Programs that has existed from a date yet to be determined, Defendants have

28

presented and continue to present various false and fraudulent claims – the exact dates and amounts to be determined – for payment and approval to officers and employees of the United States Government for services billed under improper CPT Codes and for excessive units of payment.

**CLAIM IV**

**Billing For Unnecessary Medical Services**

185.   Relators re-assert, re-allege, and incorporate herein by reference the allegations contained in Paragraphs 1 through 163, as if fully set forth herein.

186.   On or about such dates to be determined, and pertaining to specific patients and services to be determined, the records being in the possession of the Defendants, Defendants did knowingly present, and cause to be presented to officers and employees of the United States Government, claims for payment from Medicare and the other Federal Health Care Programs for epidural spinal injections and other treatments that were not medically necessary for their patients' conditions.

187.   Defendants knowingly and intentionally submitted bills to Medicare and the other Federal Health Care Programs for various reimbursable services (such as mechanical traction, manual traction, therapeutic activities and hot and cold pack therapy) when, in fact, the patients' medical conditions only warranted non-reimbursable services such as spinal decompression.

188.   Defendants knowingly and intentionally submitted bills to Medicare and the other Federal Health Care Programs for various medical services when, in fact, the patients' conditions only warranted chiropractic services that were reimbursable at a lower rate.

189.   Defendants knowingly and intentionally submitted bills to Medicare and the other

29

Federal Health Care Programs for various medical services, including the administration of epidural spinal injections, when those services were not medically necessary.

190.   Defendants did falsely represent in the claims they presented to Medicare and the other Federal Health Care Programs that the claims presented were true and accurate, when in truth and fact, the claims sought reimbursement for epidural spinal injections, medical services, and reimbursable physical therapy services when their patients could have been treated at a lower level of care.

191.   Based upon the Defendants' scheme to defraud Medicare and the other Federal Health Care Programs that has existed from a date yet to be determined to the date of this Complaint, Defendants have presented and continue to present various false and fraudulent claims – the exact dates and amounts to be determined – for payment and approval to officers and employees of the United States Government for epidural spinal injections, medical services, and reimbursable physical therapy services that were not medically necessary or appropriate for their patients' conditions.

## CAUSATION AND DAMAGES AS TO ALL CLAIMS FOR RELIEF

192.   As a direct and proximate result of the foregoing, the United States Government has incurred substantial costs and has suffered substantial damages, as stated herein and to be further presented at trial.

193.   As a direct and proximate result of the foregoing, the United States Government has incurred substantial costs and has suffered substantial damages, due to Defendants' scheme and artifice to defraud the Medicare program as stated herein.

194.   As a direct and proximate result of the foregoing, the Medicare program has

expended substantial funds in reimbursing Defendants for the claims presented, which Defendants were not entitled to receive.

195.  As a direct and proximate result of the foregoing, the Medicare program has been harmed by Defendants' scheme and artifice to defraud, as stated herein, practiced against the United States Department of Health and Human Services.

196.  As a direct and proximate result of the foregoing, Defendants are continuing to be reimbursed from Medicare at amounts substantially greater than the Government programs ought to be charged, and in amounts to be determined, with additional damages to program beneficiaries for inflated co-payments.

## DEMAND FOR JURY TRIAL AND PRAYER FOR RELIEF

Relator/Plaintiffs respectfully demand a jury trial and pray for judgment against each Defendant named herein, as follows:

(a)  That by reason of the violations of the False Claims Act as set out in this Complaint, this Court enter judgment against Defendants in an amount equal to three (3) times the amount of damages the United States Government has sustained because of Defendants' actions, plus a civil penalty of not less than Five Thousand Dollars ($5,000.00) and not more than Ten Thousand Dollars ($10,000.00) for each violation of 31 U.S.C. §3729;

(b)  That Relators, as Qui Tam Plaintiffs, be awarded the maximum amount allowed pursuant to Section 3730(d) of the False Claims Act and/or any other applicable provision of law;

(c)  That Relators be awarded all costs of this action, including reasonable attorneys' fees and costs of bringing this suit;

(d)  That equitable relief be issued to prevent future violations by the Defendants; and

31

(e)   That Relator/Plaintiffs have such other relief as this Court deems just and proper.


Respectfully Submitted,


Date: _2/8/08_                   _____

Kenneth Joel Haber
Law Office of Kenneth Joel Haber, P.C.
15879 Crabbs Branch Way
Rockville, Maryland  20855
(301) 670-0016
(301) 948-3091 (fax)

Attorney for Relator/Plaintiffs


Of Counsel:
Douglas G. Wadler, Esq.
Michael J. Tabacco, Esq.


32

JS 44 (Rev. 11/04)

**CIVIL COVER SHEET**    County in which this action arose  Oakland County

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS**    UNDER SEAL (F.C.A.)
UNITED STATES OF AMERICA ex rel. TED A. ARKFELD, D.C. AND
ANN Myers

**(b)** County of Residence of First Listed Plaintiff    Ted A. Arkfeld, D.C.
Otsego County    (Gaylord)
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Kenneth Joel Haber, Esq., Law Office of Kenneth Joel Haber, P.C., 15879
Crabbs Branch Way, Rockville, Maryland  20855, (301) 670-0016, (301) 948-3091 (fax).

**DEFENDANTS**
MARVIN L. BLEIBERG, M.D., AND MEDICAL REHABILITATION
PHYSICIANS, PLC

County of Residence of First Listed Defendant    Oakland County (West Bloomfield)
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

Case: 2:08-cv-10640
Judge: Cleland, Robert H
Referral MJ: Komives, Paul J
Filed: 02-14-2008 At 11:00 AM
POSSIBLE SEALED MATTER (EW)

**II. BASIS OF JURISDICTION** (Select One Box Only)

☐ 1  U.S. Government
Plaintiff

☐ 3  Federal Question
(U.S. Government Not a Party)

☐ 2  U.S. Government
Defendant

☐ 4  Diversity
(Indicate Citizenship of Parties in Item III)

**III. C** ...

Cit ...

Citizen of Another State    ☐ 2    ☐ 2    Incorporated *and* *a principal place*    ☐ 5
of Business In Another State

Citizen or Subject of a    ☐ 3    ☐ 3    Foreign Nation    ☐ 6    ☐ 6
Foreign Country

**IV. NATURE OF SUIT** (Select One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| &Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | ☐ 895 Freedom of Information |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | Act |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | ☐ 900 Appeal of Fee |
| | Employment | ☐ 550 Civil Rights | | | Determination Under |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | Access to Justice |
| | Other | | | | ☐ 950 Constitutionality of |
| | ☐ 440 Other Civil Rights | | | | State Statutes |

**V. ORIGIN** (Select One Box Only)

☒ 1  Original
Proceeding

☐ 2  Removed from
State Court

☐ 3  Remanded from
Appellate Court

☐ 4  Reinstated or
Reopened

☐ 5  Transferred from
another district
(specify)

☐ 6  Multidistrict
Litigation

☐ 7  Appeal to District
Judge from
Magistrate
Judgment

**VI. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
This action arises under the provisions of 31 U.S.C. §§3729 et seq., commonly called the False Claims Act ("FCA").
Brief description of cause:
billing irregularities and numerous fraudulent billing practices which resulted in significant overpayments by the United States Government.

**VII. REQUESTED IN
COMPLAINT:**

☐ CHECK IF THIS IS A CLASS ACTION
UNDER F.R.C.P. 23

**DEMAND $**
Three (3) times the amount of damages the United States
Government has sustained because of defendants' actions,
plus a civil penalty of not less than $5,000.00 and not more than $10,000.00 for each violation of 31 U.S.C. §3729;

CHECK YES only if demanded in complaint:
**JURY DEMAND:**  ☒ Yes  ☐ No

**VIII. RELATED CASE(S)
IF ANY**    (See instructions):
That Relators be awarded the maximum allowed pursuant to Section 3730(d) of the False Claims Act and/or any other applicable
provision of law; all costs; and equitable relief.
JUDGE _____    DOCKET NUMBER _____

DATE  2/14/08

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #_____    AMOUNT_____    APPLYING IFP_____    JUDGE_____    MAG. JUDGE_____

PURSUANT TO LOCAL RULE 83.11

1.          Is this a case that has been previously dismissed?                    ☐ Yes

If yes, give the following information:                                            ☒ No

Court: _____

Case No.: _____

Judge: _____


2.          Other than stated above, are there any pending or previously
            discontinued or dismissed companion cases in this or any other        ☐ Yes
            court, including state court? (Companion cases are matters in which    ☒ No
            it appears substantially similar evidence will be offered or the same
            or related parties are present and the cases arise out of the same
            transaction or occurrence.)

If yes, give the following information:

Court: _____

Case No.: _____

Judge: _____


Notes :